### HURWITZ STAMPUR & ROTH
ATTORNEYS AT LAW

MICHAEL HURWITZ  
WILLIAM J. STAMPUR  
JAMES ROTH

299 BROADWAY, SUITE 800  
NEW YORK, N.Y. 10007

(212) 619-4240  
FAX (212) 619-6743

July 6, 2009

**VIA ECF AND MAIL**
The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   **United States vs. Michael Horton, et al.**
          **08 CR 1200 (JSR)**

Dear Judge Lynch,

This sentencing memorandum is to serve as an aid for the Court in the sentencing of Mohamed Horton on July 21, 2009.

### ROLE IN THE OFFENSE

On April 13, 2009 the defendant plead guilty to Count One of the Indictment, a conspiracy for the sale of firearms pursuant to United States v. Pimentel, 932 F.2d 1029, 1034 (2d. Cir. 1991). Based upon the calculations set forth in the letter, the defendant's sentencing range is 37-46 months. The defendant agreed with others to sell firearms to an undercover officer, the base offense level of 12 was increased 4 levels because the offense involved 8-24 firearms; there was a 4 level increase because several of the firearms had obliterated serial numbers; there was a 4 level increase because the defendant engaged in trafficking of firearms. Three points were deducted for the defendant's acceptance of responsibility. The defendant is in Criminal History I having no prior arrests or convictions.

Defendant objects to ¶ 35 of the PSR—2 points are added for the defendant's role in the offense. At the time of taking the plea, based upon the discussions with the Government, it was not the position of the Government that the defendant was a leader of the conspiracy. The Government was aware of all the conversations the defendant had with the undercover or the CI. No new information was ascertained after the entry of the plea.

Pursuant to ¶ 10 of the PSR, the defendant informed the CI that co-defendant William Lam would help him purchase and traffic the firearms.

MH/HORTON, M/HORTON-PIMENTEL

HURWITZ STAMPUR & ROTH

The Honorable Jed S. Rakoff
July 6, 2009
Page 2 of 7

Although Mr. Horton negotiated the price of firearms, Paragraph 21 states that co-defendant Lam negotiated the price for other firearms and stated there were four individuals working to acquire the firearms.

Although the defendant defaced certain firearms, paragraph 15 states that the CI informed the agents that defendant Vandergrift had defaced it himself with tools provided by defendant Horton.

It should also be noted that the defendant, Bernie Peoples, and William Lam were the only ones to plead guilty to the Conspiracy to Traffic in Firearms. Ms. Davis and Mark Vandergrift pleaded guilty to making false statements in connection with a firearm purchase.

### The District Court Incorrectly Applied § 3B1.1(c) of the Guidelines in Determining Appellant's Adjusted Offense Level

Sentencing Guidelines § 3B1.1(c) provides for a 2-level increase in offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" that did not involve 5 or more participants and was not otherwise extensive. U.S.S.G. § 3B1.1(c). The Commentary to § 3B1.1 provides that "to qualify for an adjustment ... the defendant must have been the organizer, leader, manager or supervisor of one or more other participant," U.S.S.G. § 3B1.1, comment. (n.2), and that a "participant" is a "person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). Accordingly, the enhancement is properly applied only if the sentencing court finds that the defendant *directed* "another criminally responsible participant in the criminal scheme." United States v. Brinkworth, 68 F.3d 633, 641 (2d Cir. 1995)(citing U.S.S.G. § 3B1.1(c)). The enhancement may be applied to a defendant who "managed or supervised one participant." United States v. Birkin, 366 F.3d 95, 1010 (2d. Cir. 2004)(citing United States v. Burgos, 324 F.3d 88, 92 (2d. Cir. 2003)).

The Guidelines do not define the terms "manager," "managed," "supervisor," or "supervised." This Court has held that "[a] defendant may properly be considered a manager or supervisor if he 'exercise[d] some degree of control over others involved in the commission of the offense ... or play[ed] a significant role in the decision to recruit or to supervise lower-level participants.'" United States v. Birkin, 366 F.3d at 101 (quoting United States v. Blount, 291 F.3d 201, 217 (2d. Cir. 2002). See also U.S.S.G. § 3B1.1, comment. (n.4). Among the indicia of leadership are "the exercise of decision making authority," "the recruitment of accomplices," and the supervision of a lower-level participant. United States v. Greenfield, 44 F.3d 1141, 1146 (2d. Cir. 1995).

HURWITZ STAMPUR & ROTH

The Honorable Jed S. Rakoff
July 6, 2009
Page 3 of 7

See United States v. Si Lu Tian, 339 F.3d at 156 ("Guidelines only require that the defendant be an organizer or leader of one or more of [the five] participants for the section 3B1.1(a) enhancement to be appropriate."); accord United States v. Zichettello, 208 F.3d 72, 107 (2d Cir. 2000). [*72] Factors relevant to determining whether defendant was an "organizer or leader" include: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, Application Note 4.

It is clear from the official Commentary to § 3B1.1 and the case law of this Circuit that the dispositive factor as to the applicability of this enhancement is the relative level of "authority" between the participants in any criminal conduct. Neither the Guidelines or the case law require that a "manager or supervisor" must be designated in every offense involving multiple participants; nor is there a prohibition against more than one defendant being designated a "manager or supervisor." Where all the participants in a criminal offense are of roughly equal levels of culpability, an upward adjustment for the particular defendant's role in the offense is not warranted. See, United States v. Greenfield, 44 F.3d 1141, 1146 (2d. Cir. 1995).

## SENTENCING FACTORS

After the Court determines the guidelines, the Court in considering § 3553 factors, should consider a reasonable sentence.

As the Court is aware, Federal Sentencing Guidelines are not binding but advisory. See United States v. Booker, 125 S.Ct. 738 (2005) (excising the mandatory provisions of the guidelines and corresponding Sentence Reform Act (SRA), principally 18 U.S.C. §3553(b)(1)). There is a duty to consider the guidelines, among all the other factors to be considered that are identified in 18 U.S.C. §3553(a), and then determine whether to impose a "non-guidelines sentence." See United States v. Crosby, 2005 WL 240916 (2 Cir. 2005). Appellate review will be for reasonableness. Id.

> 18 U.S.C. § 3553(a) provides that: The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed;

MH/HORTON, M/HORTON-PIMENTEL

HURWITZ STAMPUR & ROTH

The Honorable Jed S. Rakoff
July 6, 2009
Page 4 of 7

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 (3) the kinds of sentences available;
 (4) the kinds of sentence and the sentencing range established for;
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…;
 (5) any pertinent policy statement…[issued by the Sentencing Commission];
 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a). The Guidelines are treated "as just one of a number of sentencing factors." United States v. Ranum, No. 04 Cr. 31, slip op., at 2-4 (E.D. Wis. Jan. 19, 2005) (recognizing that several of the factors identified in subsection 3553(a) conflict with the prescriptions and proscriptions of the Guidelines, and that such conflicts will require resolution by district courts). West, pg. 2.

While the Sentencing Commission and the aforementioned cases discuss the appropriateness of departing downward within the Guidelines, such analysis preceded the Supreme Court's decision in Booker. Now, post-Booker, the Guidelines are merely advisory, and a sentencing court must consider the Sentencing Commission's intent as just one of several salient factors, see 18 U.S.C. § 3553(a) (5) (A), in determining whether to impose a Guideline sentence or a non-Guideline sentence and the length of such sentence.

A pair of recent decision clarifies that the Supreme Court meant what it said in Booker. Kimborough v United States. 128 S.Ct. 558, 76 USLW 4023. United States v Gall, 128 S.Ct. 586. A sentence outside the Guidelines is not per se invalid, but rather the Court applies a reasonableness standard. Id. In Gall, the Supreme Court held that a Court of Appeals may not require sentences that deviate substantially from the Guidelines range to be justified by "extraordinary circumstances." 128 S.Ct. 586. The Guidelines are but one of the §3553 factors to be considered and do not carry any special weight. "The Guidelines should be the starting point and the initial benchmark." But a judge must make an individualized assessment considering all the statutory factors. Factors to consider in granting a downward departure under § 4A1.3 may include "…" the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [Criminal History Category] VI." United States v. Mishoe, 241 F. 3d. 214, 219 (2d Cir. 2001).

MH/HORTON, M/HORTON-PIMENTEL

HURWITZ STAMPUR & ROTH

The Honorable Jed S. Rakoff
July 6, 2009
Page 5 of 7

In *United States v. Cavera,* 2008 WL 5102341 (2d. Cir. December 4, 2008) and *United States v. Adelson*, 2008 WL 5155341 (2d. Cir. December 9, 2008) the Court held that sentencing courts have "very wide latitude" to decide proper punishment.

## FAMILY HISTORY

Defendant is the older of two children of his parents Delores and Michael Horton. His sister, aged 21, resides with her parents in South Carolina.

Defendant was raised in middle class circumstances in Sumter, SC. Both his parents are registered nurses. Defendant maintains a close relationship with his parents and sister. The family is very supportive of Michael. Michael's mother, in her letter to the Court, describes her worries as a result of the conviction and asks the Court for leniency.

Michael's father, aged 57, is currently a case manager for an insurance company. Michael's mother presently works in a hospital.

The PSR and the letter of Michael's mother describe the change Michael has undergone since his arrest and conviction of this case.

During the period of the conspiracy, Michael was addicted to alcohol and was undergoing financial problems. Mr. Horton attempted, in part, to solve his financial difficulties by selling firearms. Mr. Horton clearly realizes that behavior was very destructive and has altered the course of his life.

He has taken steps to get his life on track and is voluntarily attending an alcohol treatment program, New Alternatives. This program and Michael's participation in the program is described in a letter dated May 29, 2009 by Michelle Holland, MA, a Clinical Counselor with the program.

Mr. Horton attends sessions three times per week for three hours each session.

On April 4, 2009, the defendant married Katherine Pollard. Ms. Pollard was employed as a receptionist in a medical office until one week ago when she gave birth. The baby daughter had an aneurysm in her brain which resulted in surgery at Roosevelt Hospital in New York, on or about July 2, 2009. The child was born in North Carolina but was medi-evac to New York for the operation.

Hurwitz Stampur & Roth

The Honorable Jed S. Rakoff
July 6, 2009
Page 6 of 7

Ms. Pollard is 21 years old and has two young children from a prior relationship. In the PSR, Ms. Pollard describes Michael as "caring and compassionate" and "a great father" to her two children. Ms. Pollard also informed the Probation Officer that her husband has become more involved in church activities and has remained sober since his arrest. Mr. Horton, due to financial difficulties, now rents out the home he purchased and lives in a rented house with his wife and her children.

## MENTAL AND EMOTIONAL HEALTH

PSR states that Michael was diagnosed with ADHD when he was in grammar school. Following his arrest in December 2008, the defendant has advised that he has suffered from bouts of anxiety. Medical records indicate that he is prescribed Lexapro.

## SUBSTANCE ABUSE PROBLEMS

Defendant admits that he has used alcohol since age 16, and by age 21 was drinking every day, he was drinking heavily at the time of the conspiracy. As previously described, the defendant is now enrolled in an alcohol program which he entered after his interview with Probation (paragraph 61 describes the defendant's previous program or the program he was attending on the date of his interview. He was advised to enter a more rigorous program and he now voluntarily attends New Alternatives).

## EDUCATION

Defendant has an Associate's Degree in Science but has had difficulty in his college studies.

## EMPLOYMENT

The PSR indicates that the defendant is unemployed but the defendant advises counsel that he does freelance landscaping work.

Defendant's previous employment includes a position as a companion to a senior citizen, an employee at a hardware store, and as a pharmacy technician at a hospital from 2003 to 2004.

HURWITZ STAMPUR & ROTH

The Honorable Jed S. Rakoff
July 6, 2009
Page 7 of 7

## CONCLUSION

This is the defendant's first arrest and conviction. Defendant made a serious and damaging error in knowingly and voluntarily engaging in the sale of firearms. At the time of the sale, Mr. Horton was having financial difficulties and was drinking heavily.

He is now attempting to change his life. He is married and is caring for the two children of his wife.

The birth of his daughter presents Michael and his family with additional difficulties, both emotionally and financially. This circumstance alone is enough to test any family and is a factor for the Court to consider in reducing the sentence to Probation.

Mr. Horton has been addressing his problems, in part, by attending an alcohol program.

The defendant's mother has written a moving letter asking the Court for leniency. A sentence of Probation is appropriate since it is sufficient, but not greater than necessary to comply with § 3553 of the guidelines.

Respectfully Submitted,

Michael Hurwitz

cc.   AUSA Todd Blanche

MH:jy

MH/HORTON, M/HORTON-PIMENTEL